Case 2:17-cv-00121   Document 30   Filed on 09/14/17 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
September 14, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| EDWARD MOORE, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:17-CV-121 |
| § | |
| JANE DOE, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

Plaintiff Edward Moore is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For purposes of screening, Plaintiff has stated: (1) deliberate indifference claims against **Registered Nurse (RN) G. Samuel**, **John Doe UTMB Representative**, and **John Doe Texas Tech Representative** in their individual capacities; (2) an excessive force claim against **Sgt. Juan Trevino** in his individual capacity; and (3) failure-to-protect claims against **Officer Jane Doe and Captain Perales** in their individual capacities. The undersigned will order service on the defendants identified by name.[1] The undersigned further recommends that Plaintiff's claims for money damages against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment.

---

[1] Plaintiff is advised he is responsible for identifying the "John and Jane Doe" defendants through the discovery process. Once identified, Plaintiff is instructed to move the Court to order service on these defendants.

I. **JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

II. **PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently serving two five-year sentences for burglary convictions entered on February 25, 2015 in El Paso County, Texas. Plaintiff is currently assigned to the Allred Unit in Iowa Park, Texas. However, the facts giving rise to Plaintiff's claims in this lawsuit occurred while Plaintiff was assigned to the McConnell Unit in Beeville, Texas. In this action, Plaintiff asserts claims of deliberate indifference to his serious medical needs, excessive force, and failure to protect.

Plaintiff named the following defendants in his original complaint: (1) Officer Jane Doe; (2) Sgt. Juan Trevino, Correctional Officer; (3) RN G. Samuel; (4) John Doe, a University of Texas Medical Branch (UTMB) Representative; and (5) John Doe, a Texas Tech Representative. A *Spears*[2] hearing was conducted on June 29, 2017. During the hearing, Plaintiff raised an additional claim not set forth in his written complaint. Plaintiff testified that Captain Sophia Perales failed to intervene to stop the excessive use of force by another officer. Plaintiff did not name Captain Perales in his original complaint. However,

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

he expressed a desire at the hearing to add her as a defendant. Therefore, Plaintiff was granted leave to amend to add Captain Perales as a defendant.

On August 14, 2017, Plaintiff filed his amended complaint in which he named the following defendants in their individual and official capacities: (1) RN Samuel; (2) Sgt. Trevino; (3) Officer Jane Doe; (4) Captain Perales; (5) John Doe UTMB Representative; and (6) John Doe Texas Tech Representative. (D.E. 29, pp. 1-2). Plaintiff seeks monetary relief. (D.E. 29, p. 2). The following representations were made either at the *Spears* hearing or in Plaintiff's original complaint (D.E. 1) and amended complaint (D.E. 29):

Plaintiff was housed at the McConnell Unit from December, 2015 until September, 2016, when he was transferred to the Allred Unit. At the time of the *Spears* hearing, Plaintiff was twenty-nine years old, weighed 217 pounds, and stood five feet eight inches tall. Plaintiff suffers from high cholesterol.

Plaintiff weighed around 230 pounds during his time at the McConnell Unit. On May 25, 2016, from 6:00 p.m. to 8:00 p.m. in his dormitory area, Plaintiff experienced symptoms that included a rapid heart rate, profuse sweating, dizziness, and a high temperature. There is no air conditioning in the McConnell Unit's dormitory areas. At that time, Plaintiff was taking medication for his bipolar disorder. Based on his belief he was suffering from heat exhaustion, Plaintiff obtained a pass to visit the McConnell Unit's medical department. When he arrived at medical, RN Samuel denied Plaintiff medical attention, telling Plaintiff that he was faking it in order to be in an air-conditioned environment. RN Samuel then instructed Plaintiff to return to his cell.

On his way back to housing, Plaintiff encountered Captain Perales, Sgt. Trevino, and another officer and informed them he was denied medical care. Plaintiff was advised to return to his cell. Plaintiff passed out as soon as he reached his cell. An officer then reported Plaintiff's situation as a medical emergency. Sgt. Trevino, who was the first officer to respond to Plaintiff's cell, directed profanity at Plaintiff for playing games with medical. When Sgt. Trevino walked out of the cell, Plaintiff fell to the floor. Sgt. Trevino returned, handcuffed Plaintiff, told Plaintiff he would report him for threatening an officer, and called for a video camera.

Medical personnel arrived at Plaintiff's cell, and Plaintiff was subsequently shackled and strapped to a gurney. As Plaintiff was being rolled on the gurney through the dining facility, he noticed that an officer was directing a hand-held video camera on Plaintiff. Plaintiff asked Sgt. Trevino to loosen up the hand cuffs which had been placed too tightly on Plaintiff. Plaintiff alleges Sgt. Trevino proceeded to assault Plaintiff for two minutes with closed fists while Plaintiff was shackled and strapped down to the gurney. During the course of the assault, Plaintiff alleges Officer Jane Doe pointed the hand-held video camera down to the ground and did not intervene to assist Plaintiff. Plaintiff further alleges Captain Perales was present during the assault but did not intervene. Plaintiff suffered multiple injuries as a result of the assault, including two knocked-out teeth, head trauma, bumps, and cuts.

Plaintiff filed a Step 1 grievance against Sgt. Trevino in which he complained about the excessive force used. The inspector general's office found Plaintiff's allegations to be

meritorious. In connection with the investigation, no video involving Sgt. Trevino's assault was located. Plaintiff testified that Sgt. Trevino received a temporary suspension.

After being assaulted by Sgt. Trevino, Plaintiff was not taken back to medical for treatment. Plaintiff alleges his subsequent I-60 requests for medical treatment for his injuries and to alleviate his pain went unanswered for two months. Plaintiff did not know who was responsible for denying his requests for medical treatment.

### III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### IV.  DISCUSSION

#### A.  Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues each of the individual defendants in their official capacities for monetary damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against the individual Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

#### B.  Deliberate Indifference to Serious Medical Needs

To state a § 1983 claim for denial of adequate medical care, a prisoner must allege the official acted with deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991);

*Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

However, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). Negligent medical care does not constitute a valid § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982).

### *(1) RN Samuel*

Plaintiff alleges that: (1) on May 25, 2016, he was experiencing symptoms associated with heat exhaustion that included a rapid heart rate, profuse sweating, dizziness, and a high temperature; (2) he was provided a pass to medical; (3) when he arrived at medical, RN Samuel denied Plaintiff medical attention, telling Plaintiff that he was faking it in order to be in an air-conditioned environment; and (4) Plaintiff to return to his cell, as instructed by RN Samuel, at which point he proceeded to pass out. Taken as true, Plaintiff has stated a claim of deliberate indifference to his serious medical needs against RN Samuel. Therefore, the undersigned recommends retaining Plaintiff's deliberate indifference against RN Samuel in his/her individual capacity.

### (2) UTMB and Texas Tech Representatives

Plaintiff alleges that he suffered numerous serious injuries following Sgt. Trevino's assault on him, including two knocked-out teeth, head trauma, bumps, and cuts. Nevertheless, Plaintiff alleges that his I-60 requests for medical treatment for his injuries and to alleviate his pain went unanswered for two months.

Plaintiff testified at the *Spears* hearing that he did not know who had denied his requests for medical treatment. In both his original and amended complaints, Plaintiff named a John Doe UTMB Representative and a John Doe Texas Tech Representative as the responsible parties for refusing him treatment for his serious injuries. (D.E. 1, pp. 3, 5; D.E. 29, p. 2). Taken as true, Plaintiff's allegations against these unknown individuals successfully state a deliberate indifference claim as they indicate he was denied medical care for an extensive amount of time in the aftermath of being seriously injured. Further factual development of this claim during discovery will be beneficial in determining which specific individual or individuals may have acted to deny medical care to Plaintiff. Therefore, the undersigned recommends retaining Plaintiff's deliberate indifference against John Doe UTMB Representative and the John Doe Texas Tech Representative in their individual capacities.

### C. Excessive Force

Inmates have a constitutional right to be free from the use of excessive force. *See Anthony v. Martinez,* 185 F. App'x 360, 363 (5th Cir. 2006). To state an excessive force claim, a plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the

injury he suffered was more than *de minimis* but not necessarily significant.  *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10 (1992).

Thus, a prison official's "excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Id.* at 4; *see also Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010) (reversing district court's dismissal of prisoner's excessive force claim based entirely on its determination that his injuries were "*de minimis*," reasoning that it was "at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury."). Additional relevant objective factors in the inquiry of the application of excessive force include (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response.  *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999).

Although a *de minimis* injury is not cognizable, the extent of the injury necessary to satisfy the injury requirement "is directly related to the amount of force that is constitutionally permissible under the circumstances." *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996) (citations omitted); *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (noting that the minimum qualifying injury "changes with the facts of each case"); *Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is ... subjective -- it is defined entirely by the context in which the injury arises.").

In this case, Plaintiff alleges that Sgt. Trevino assaulted him with a closed fist for two minutes while Plaintiff was shackled and strapped to a gurney. Plaintiff further alleges that, as a result of Sgt. Trevino's assault, he suffered serious injuries as noted above. Taken as true, Sgt. Trevino's use of force may have been applied maliciously and sadistically to cause Plaintiff serious harm. Therefore, the undersigned recommends retaining Plaintiff's excessive force claim against Sgt. Trevino in his individual capacity.

### D. Failure to Protect

In order for prison officials to be held liable under the Eighth Amendment for failure to protect, a prisoner must prove that the official knew of and disregarded an excessive risk to the inmate's safety; was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the inference; and failed to take reasonable remedial action. *Farmer v. Brennan*, 511 U.S. 825, 842-45 (1994). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment." *Id.* at 846.

In addition, a prison officer also has a duty to intervene and attempt to end an attack on an inmate. *See Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). "An official cannot stand idly by, but rather must intervene or take other reasonable action to protect a detained person from known danger." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 1000, 1005 (E.D. Tex. 2006).

In this case, Plaintiff states that both Officer Jane Doe and Captain Perales failed to intervene and protect Plaintiff as Sgt. Trevino was assaulting Plaintiff for a two-minute

period while he was shackled and strapped to a gurney. With respect to Officer Jane Doe, Plaintiff alleges that she turned her hand-held video camera downward and did nothing to stop Sgt. Trevino's use of force. Plaintiff further alleges that Captain Perales was present during the assault but did make any attempt to intervene. Taken as true, Plaintiff's allegations state failure-to-protect claims against both defendants. Therefore, the undersigned recommends retaining Plaintiff's failure-to-protect claims against Officer Jane Doe and Captain Perales in their individual capacities.

V.     CONCLUSION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state the following claims: (1) deliberate indifference claims against **Registered Nurse (RN) G. Samuel**, **John Doe UTMB Representative**, and **John Doe Texas Tech Representative** in their individual capacities; (2) an excessive force claim against **Sgt. Juan Trevino** in his individual capacity; and (3) failure-to-protect claims against **Officer Jane Doe and Captain Perales** in their individual capacities. Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service as to these defendants by separate order. It is further respectfully recommended that Plaintiff's claims for money damages against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment.

ORDERED this 14th day of September, 2017.

_Jason Libby_
Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).