United States District Court
Southern District of Texas
**ENTERED**
May 13, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EDWARD  MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-121 |
| | § | |
| GABRIELLE  GUZMAN, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION TO DENY
THE SECURITY DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND TO GRANT IN PART AND DENY IN PART THE
<u>MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Edward Moore is a former Texas inmate appearing *pro se* and *in forma pauperis*.  In this prisoner civil rights action, Plaintiff raises claims of deliberate indifference to his serious medical needs, excessive force, and failure to protect.  Pending before the Court are the following: (1) a Motion for Summary Judgment filed by Defendants Juan Trevino, Gabrielle Guzman, and Reyes Alvarez (the "Security Defendants") (D.E. 126); and (2) a Motion for Summary Judgment filed by Defendants Gregory Samuel and Martha Tijerina (the "Medical Defendants") (D.E. 129).[1]

For the reasons stated herein, it is respectfully recommended that the Court **DENY** the Security Defendants' summary judgment motion and **GRANT in part** and **DENY in part** the Medical Defendants' summary judgment motion.

---

[1] Defendant Tijerina has been referenced in  several pleadings as "Martha Blackwell."  However, that was her former name.

1 / 30

## I.      JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

## II.      PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).  At the time he filed his complaint, Plaintiff was serving two five-year sentences for burglary convictions entered on February 25, 2015 in El Paso County, Texas.  Plaintiff recently sent the Court a Notice of Change of Address indicating that he has been released from prison.  (D.E. 132).

The facts giving rise to Plaintiff's claims occurred while Plaintiff was assigned to the McConnell Unit in Beeville, Texas.  In seeking monetary relief, Plaintiff named the following defendants in his original complaint: (1) Officer Jane Doe; (2) Sgt. Juan Trevino, Correctional Officer; (3) Registered Nurse (RN) Samuel; (4) John Doe, a University of Texas Medical Branch (UTMB) Representative; and (5) John Doe, a Texas Tech Representative.   Plaintiff asserted Eighth Amendment claims of deliberate indifference to his serious medical needs and excessive force.

A *Spears*[2]  hearing was conducted on June 29, 2017, during which Plaintiff raised an additional claim not set forth in his original complaint.  Plaintiff testified that Captain Sophia Perales failed to intervene to stop the excessive use of force by another officer.

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

The undersigned initially granted Plaintiff leave to amend to add Captain Perales as a defendant and any other prison officials who may have been personally involved in the alleged use of excessive force.  The undersigned later clarified these instructions by directing Plaintiff to file a supplemental complaint adding Captain Perales as well as related allegations and claims not raised in the original complaint.

On August 14, 2017, Plaintiff filed a pleading entitled "Amend Complaint," in which he named the following defendants in their individual and official capacities: (1) RN Samuel; (2) Sgt. Trevino; (3) Officer Jane Doe; (4) Captain Perales; (5) John Doe UTMB Representative; and (6) John Doe Texas Tech Representative.  (D.E. 29, pp. 1-2).

On September 14, 2017, the undersigned issued a Memorandum and Recommendation (September 14, 2017 M&R), recommending that Plaintiff's: (1) deliberate indifference claims against RN Samuel, John Doe UTMB Representative, and John Doe Texas Tech Representative in their individual capacities be retained; (2) excessive force claim against Sgt. Trevino in his individual capacity be retained; (3) failure-to-protect claims against Officer Jane Doe and Captain Perales in their individual capacities be retained; and (4) claims for money damages against all Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.  (D.E. 30).  The undersigned ordered service on RN Samuel, John Doe UTMB Representative, John Doe Texas Tech Representative, Sgt. Trevino, Officer Jane Doe, and Captain Perales.  (D.E. 31).  Sergeant Trevino subsequently filed his answer.  (D.E. 39).

On September 28, 2017, the Office of the Attorney General (OAG) filed an *amicus curiae* objection to the September 14, 2017 M&R, contending that John Doe

3 / 30

Texas Tech Representative is not a proper defendant in this lawsuit.  (D.E. 32).  Plaintiff
agreed with the OAG's objection and did not raise any independent objections.  (D.E. 33,
34).  In sustaining the OAG's objection, District Judge Hilda Tagle declined to adopt the
September 14, 2017 M&R only as to Plaintiff's claim against John Doe Texas Tech
Representative and adopted the September 14, 2017 M&R in all other respects.  (D.E.
56).

On October 30, 2017, pursuant to Federal Rule of Civil Procedure 12(b)(6), RN
Samuel filed a Motion to Dismiss Plaintiff's Amended Complaint.  (D.E. 38).   On
January 25, 2018, the undersigned issued a Memorandum and Recommendation (January
25, 2017 M&R), recommending that RN Samuel's Rule 12(b)(6) motion be denied.
(D.E. 60).  Judge Tagle subsequently adopted the findings and conclusions contained in
the January 25, 2018 M&R. (D.E 84).

On January 26, 2018, the undersigned conducted a telephone conference with the
parties.  Plaintiff was instructed to file an amended complaint for the purpose of
substituting the names of individuals in place of the John and Jane Doe defendants and
for naming additional defendants.  Plaintiff filed his motion to amend the complaint on
February 5, 2018.  (D.E. 63).  Therein, Plaintiff identified: (1) RN Martha Tijerina as
"John Doe UTMB Representative," who was alleged to have been deliberately indifferent
to Plaintiff's serious medical needs; and (2) Gabrielle Guzman as "Officer Jane Doe,"
who was alleged to have failed to protect Plaintiff from the excessive use of force   (D.E.
63, pp. 1, 4-5).  Plaintiff further sought to add Sgt. Reyes Alvarez, who was alleged to
have participated in the unlawful use of excessive force against Plaintiff with Sgt.

4 / 30

Trevino.  (D.E. 63, pp. 1, 3).  The undersigned granted Plaintiff's motion to amend (D.E. 64) and ordered supplemental service on Defendants Tijerina, Guzman, and Alvarez. (D.E. 65).

Counsel for the TDCJ informed the Court that Defendants Guzman and Perales are no longer employed with the TDCJ and, therefore, submitted the last known addresses of these defendants under seal.  (D.E. 68, 69, 73, 74, 75).  On February 15, 2018, the undersigned ordered supplemental service on these defendants at their last known addresses.  (D.E. 76).  While the summons issued to Defendant Guzman was returned as executed, the summons issued to Defendant Perales was returned as unexecuted.  (D.E. 78, 83).  Defendants Tijerina, Samuel, Guzman, and Alvarez then filed their answers. (D.E. 86, 87).  On June 18, 2018,  the undersigned denied Plaintiff's motion for default judgment against Defendants Guzman and Perales.  (D.E. 106, p. 2).

On October 2, 2018, the Security Defendants (Guzman, Alvarez, and Trevino) filed their Motion for Summary Judgment.  (D.E. 126).  Two days later, the Medical Defendants (Tijerina and Samuel) filed their Motion for Summary Judgment.  (D.E. 129). Plaintiff subsequently filed his response to the summary judgment motions.  (D.E. 140).

## III.   SUMMARY JUDGMENT EVIDENCE

The Security Defendants offer the following evidence in support of their summary judgment motion:

Exh. A:      Plaintiff's Relevant TDCJ Disciplinary Records (D.E. 126-1).

Exh. B:      TDCJ Offender Search Results regarding Plaintiff (D.E. 126-2).

The Medical Defendants offer the following evidence in support of their summary judgment motion:

Exh. A:      Plaintiff's  Relevant TDCJ Grievance Records (D.E. 129-1).

Exh. B:      Affidavit of Dr. Steven Bowers with attached exhibits (D.E. 129-2).

Exh. C.      Plaintiff's Relevant UTMB Medical Records and Sick Call Requests (D.E. 129-3).

Plaintiff has not attached any evidence to his response to the summary judgment motions.  Plaintiff's verified complaints and testimony at the *Spears* hearing, however, may serve as competent summary judgment evidence.  *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017).  Like other parts of the record, Plaintiff's verified complaint and *Spears*-hearing testimony must satisfy Federal Rule of Civil Procedure 56(c) in order to be considered at summary judgment.  *See Mengele v. AT&T Servs. Inc.*,  No. 3:15-cv-3934, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) ("[T]he verified complaint and sworn interrogatory answers of the *pro se* litigant can be considered as summary judgment evidence *to the extent that such pleadings comport with the requirements of current Rule 56(c)*.") (emphasis added) (citations omitted).  The undersigned, therefore, will not consider parts of Plaintiff's verified complaint or *Spears*-hearing testimony that are not made on personal knowledge or that would be inadmissible in evidence.  *See* Fed. R. Civ. P. 56(c)(4).

Accordingly, the competent summary judgment evidence establishes the following:

### A. Plaintiff's Verified Complaint and *Spears* Hearing Testimony

Plaintiff was housed at the McConnell Unit from December 2015 until September 2016, when he was transferred to the Allred Unit. At the time of the *Spears* hearing, Plaintiff was twenty-nine years old, weighed 217 pounds, and stood five feet eight inches tall. Plaintiff suffers from high cholesterol.

Plaintiff weighed around 230 pounds during his time at the McConnell Unit. On May 25, 2016, from 6:00 p.m. to 8:00 p.m. in his dormitory area, Plaintiff experienced symptoms that included a rapid heart rate, profuse sweating, dizziness, and a high temperature. Based on his belief he was suffering from heat exhaustion, Plaintiff obtained a pass to visit the McConnell Unit's medical department. When he arrived at medical, RN Samuel denied Plaintiff medical attention, telling Plaintiff that he was faking it in order to be in an air-conditioned environment. RN Samuel then instructed Plaintiff to return to his cell.

On his way back to housing, Plaintiff encountered Captain Perales, Sgt. Trevino, and Sgt. Alvarez and informed them he was denied medical care. Plaintiff was advised to return to his cell. Plaintiff alleges he passed out as soon as he reached his cell. An officer then reported Plaintiff's situation as a medical emergency. Plaintiff alleges Sgt. Trevino responded to his cell and directed profanity at Plaintiff for playing games. When Sgt. Trevino walked out of the cell, Plaintiff fell to the floor. Sgt. Trevino returned,

handcuffed Plaintiff, told Plaintiff he would report him for threatening an officer, and called for a video camera.

Medical personnel arrived at Plaintiff's cell, and Plaintiff was subsequently shackled and strapped to a gurney. As Plaintiff was being rolled on the gurney through the dining facility, he noticed an officer was directing a hand-held video camera on Plaintiff. Plaintiff asked Sgt. Trevino to loosen up the hand cuffs which had been placed too tightly on him. Plaintiff alleges that Sgt. Trevino assaulted Plaintiff for two minutes with closed fists while Plaintiff was shackled and strapped down to the gurney. Sgt. Alvarez also is alleged to have participated in the assault. During the course of the assault, Plaintiff noticed that Officer Guzman pointed the hand-held video camera down to the ground and did not intervene to assist Plaintiff. Plaintiff maintains Captain Perales also was present during the assault but did not intervene. Plaintiff suffered multiple injuries as a result of the assault, including two knocked-out teeth, head trauma, bumps, and cuts.

Plaintiff filed a Step 1 grievance against Sgt. Trevino in which he complained about the excessive force used. The inspector general's office found Plaintiff's allegations to be meritorious and opened an investigation. In connection with the investigation, no video involving Sgt. Trevino's assault was located. Plaintiff testified that Sgt. Trevino received a temporary suspension.

After being assaulted by Sgt. Trevino, Plaintiff was not taken back to medical for treatment. Plaintiff's subsequent I-60 requests for medical treatment for his injuries and to alleviate his pain went unanswered by RN Tijerina.

## B.   The Security Defendants' Summary Judgment Evidence

Sgt. Trevino brought a disciplinary case against Plaintiff based on an incident occurring at 8:15 p.m. on May 25, 2016 in the hallway of Plaintiff's dining hall.  (D.E. 126-1, p. 8).  Sgt. Trevino charged Plaintiff with using his hands to assault Sgt. Trevino, causing injuries to Sgt. Trevino that required first aid treatment.  (D.E. 126-1, p. 8).  In connection with the disciplinary report, Sgt. Trevino stated that: (1) on May 25, 2016, he instructed Plaintiff to get dressed to be escorted to medical; (2) Sgt. Trevino applied hand restraints on Plaintiff as a precaution; (3) Plaintiff then told Sgt. Trevino that he Sgt. Trevino had fallen into a trap; and (4) after arriving in the Dining room hallway, Plaintiff struck Sgt. Trevino in the left jaw area with both hands; and (5) Sgt. Trevino suffered injuries requiring first aid.  (D.E. 126-1, p. 9).  Plaintiff denied assaulting Sgt. Trevino. (D.E. 126-1, p. 10).

Plaintiff pled not guilty to the assault charge at the disciplinary hearing conducted on June 7, 2016.  (D.E. 126-1, p. 8).  The disciplinary hearing officer found Plaintiff guilty and imposed punishment including the loss of 364 days of good-time credits. (D.E. 126-1, p. 8).

## C.   The Medical Defendants' Summary Judgment Evidence

### (1)  Plaintiff's Medical Records

On May 25, 2016, Plaintiff visited the McConnell Unit's medical department at around 7:20 or 7:25 p.m. complaining of heat exhaustion.  (D.E. 129-3, pp. 34-35, 47). RN Samuel attempted to assess Plaintiff, who then refused to undergo a medical evaluation for heat complaints.  (D.E. 129-3, pp. 35, 47).  After refusing a medical

evaluation, RN Samuel notified Plaintiff that a refusal to enter the clinic for a proper evaluation was considered a self-termination of the medical exam.  (D.E. 129-3, p. 35). Plaintiff requested the name of the nurse, which was given to him, and he left the medical department appearing upset.  (D.E. 129-3, p. 35).  While not being able to examine Plaintiff fully, RN Samuel reported in her clinical notes that Plaintiff was alert and that his respirations were equal and unlabored.  (D.E. 129-3, p. 35).

Later during the evening on May 25, 2016, Plaintiff was involved in a use of force with TDCJ security personnel.  (D.E. 129-3, p. 7).  At approximately 10:25 p.m., TDCJ security personnel brought Plaintiff into the medical department to treat him for facial abrasions and bruising, jaw pain, and avulsed teeth.  RN Samuels initiated the use-of-force protocol and treated Plaintiff.  (D.E. 129-3, p. 7).  Plaintiff was medically cleared to be released to security for use-of-force clearance but was scheduled for continued medical observation and monitoring.  (D.E. 129-3, p. 7).

Twenty minutes after being released to security, RN Samuel examined Plaintiff again after security personnel requested medical assistance.  (D.E. 129-3, p. 7).  RN Samuel evaluated Plaintiff who was complaining of headache, ear pain, and severe jaw pain.  (D.E. 129-3, p. 10).   RN Samuel determined that he should be transferred to the emergency room at the Christus Spohn Hospital-Beeville for further treatment.  (D.E. 129-3, p. 10).  On May 25, 2016, Plaintiff underwent a Computed Tomography (CT) scan of his head and cervical spine while at the emergency room.  (D.E. 129-3, pp. 14, 16). The treating physicians at the emergency room found no evidence of acute intracranial pressure or acute cervical spine injury from the CT scan.  (D.E. 129-3, pp. 14, 16).

Plaintiff was discharged from the hospital just after midnight with orders to take prescription medication for continued pain.  (D.E. 129-3, p. 13).

At approximately 3:30 a.m. on May 26, 2016, Plaintiff was reevaluated by RN Samuel upon Plaintiff's return to the McConnell Unit.  (D.E. 129-3, pp. 22-28).  Plaintiff refused to continue treatment by RN Samuel because there were no video cameras recording the medical evaluation.  (D.E. 129-3, p. 26).  Plaintiff asked to be returned to his housing unit.  (D.E. 129-3, p. 26).

During the morning of May 26, 2016, medical personnel at the McConnell Unit treated Plaintiff's dental avulsions.  (D.E. 129-3, pp. 28-30).  Medical staff prescribed antibiotic and anti-inflammatory medicines to treat Plaintiff's avulsed teeth, attempted to stabilize Plaintiff's loose tooth, and scheduled a follow-up appointment.  (D.E. 129-3, p. 29). Plaintiff was also treated by both medical and dental personnel on May 26, 2016. (D.E. 129-3, pp. 31-32, 38-41).  Medical staff further ordered x-ray imaging of Plaintiff's forearm to address his complaints of tenderness, bruising, and fluid retention in the affected area.  (D.E. 129-3, p. 32).  Medical health providers discussed with Plaintiff the events related to the use of force on May 25, 2016 and recommended continuing with the current plan of care consisting of regular treatment as well as follow-up care upon request.  (D.E. 129-3, pp. 38-41).

Medical personnel continued to evaluate Plaintiff with regular follow-up medical visits following the use of force.  On June 1, 2016, medical personnel reviewed x-rays of Plaintiff's left forearm and noted no acute fracture or dislocation.  (D.E. 129-3, p. 63). On June 2, 2016, medical staff ordered follow-up blood work and vaccines at regular

intervals for the next year and encouraged Plaintiff to submit sick call requests as needed for follow-up complaints.  (D.E. 129-3, p. 64).  Medical staff treated Plaintiff on June 30, 2016 with a steroid injection for pain and inflammation.   (D.E. 129-3, pp. 109-10). Plaintiff visited medical for follow-up dental treatment on July 20, 2016, and the dentist ordered x-rays of the affected teeth and prescribed further treatment with antibiotic medication.  (D.E. 129-3, pp. 124-127).   On July 27, 2016, Plaintiff visited medical for neck pain, and a cervical spine x-ray was ordered.  (D.E. 129-3, pp. 128-29).

### (2)   Plaintiff's Relevant Grievances

On May 31, 2016, Plaintiff filed a Step 1 grievance (Grievance No. 2016150444), complaining about the medical treatment he received on May 25, 2016 by RN Samuel. (D.E. 129-1, pp. 3-4).  Plaintiff did not mention any other individual in this grievance. The reviewing officer rejected Plaintiff's Step 1 grievance, finding that Plaintiff had refused RN Samuel's attempt to assess him and then self-terminated the visit.  (D.E. 129-1, p. 4).

Plaintiff subsequently filed a Step 2 grievance on June 22, 2016, reiterating his complaints against RN Samuel.  (D.E. 129-1, pp. 5-6).  Plaintiff complained for the first time in the Step 2 grievance that his multiple sick call requests following the May 25, 2016 use of force went unanswered by RN Tijerina.   (D.E. 129-3, pp. 5-6).   The reviewing officer rejected Plaintiff's Step 2 grievance, noting that Plaintiff: (1) had been examined on numerous occasions in the two months following the use of force "by unit nursing staff, unit medical provider, unit dental provider, [and] emergency room staff"; and (2) had received CT scans as well as x-rays.  (D.E. 129-1, p. 6).

On July 13, 2016, Plaintiff filed another Step 1 grievance (Grievance No. 2016177239), complaining in general that medical personnel at the McConnell Unit ignored his multiple sick call requests for medical attention following the May 25, 2016 use of force. (D.E. 129-1, pp. 13-14). The reviewing officer rejected this grievance, finding that Plaintiff had received medical attention on July 27, 2016 and had been scheduled for a follow-up with a doctor. (D.E. 129-1, p. 14). Plaintiff's Step 2 grievance was likewise rejected on the basis that Plaintiff had received significant medical attention for his injuries suffered on May 25, 2016. (D.E. 129-1, pp. 15-16).

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence,

and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a

government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 46 F.3d 481, 490 (5th Cir. 2001).

## V.    DISCUSSION

### A.    The Security Defendants' Summary Judgment Motion

The Security Defendants contend that Plaintiff's excessive force and failure-to-protect claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).   While not addressing the *Heck*-bar argument, Plaintiff responds that his claims have merit.   (D.E. 140, p. 1).

The Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).   "It is well-settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted . . . .'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck*, 512 U.S. at 486-87).   Thus, unless "the factual basis for the conviction is temporally and conceptionally distinct from the excessive force claim, "a plaintiff must show that his conviction has been overturned in order to pursue a § 1983 claim." *Id.* at 498.

The *Heck* doctrine also operates to bar prisoners from seeking relief or otherwise challenging the punishment imposed by a disciplinary proceeding resulting in the loss of good time credits through a § 1983 action.  *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[plaintiff's] claim for declaratory relief and money damages, based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); *Clarke v. Stalder*, 154 F.3d 186, 189-91 (5th Cir. 1998) (en banc) (applying *Heck* to bar plaintiff's constitutional claims for injunctive relief that were fundamentally intertwined with his request for restoration of good-time credits).  *Heck*, therefore, prohibits claims stemming from disciplinary actions that resulted in the loss of good time credits, unless the prisoner can show that the disciplinary conviction has been set aside.  *See Hadnot v. Butler*, 332 F. App'x 206 (5th Cir. 2009) (affirming dismissal of inmate's §1983 excessive force claims where inmate failed to show that the disciplinary conviction stemming from the same incident was overturned, even though the inmate did not attack the disciplinary conviction itself).  Conversely, *Heck* "is not … implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004).

Plaintiff claims in this case that Sgt. Trevino and Sgt. Alvarez participated in using excessive force against Plaintiff on May 25, 2016 and that Officer Guzman failed to protect Plaintiff from the use of excessive force.   He seeks monetary relief with respect to these claims. The competent summary judgment presented establishes that Sgt. Trevino charged Plaintiff with assaulting him on the evening of May 25, 2016, to the extent that his injuries required first aid treatment.  (D.E. 126-1, p. 8).  Plaintiff denied

assaulting Sgt. Trevino, even though the disciplinary conviction report indicates that Plaintiff struck Sgt. Trevino in the left jaw.  (D.E. 126-1, p. 10).  Despite Plaintiff's not guilty plea, the disciplinary hearing officer (DHO) found Plaintiff guilty and imposed punishment including the loss of 364 days of good-time credits.  (D.E. 126-1, p. 8).

Plaintiff alleges that Sgt. Trevino and Sgt. Alvarez participated in a two-minute assault of Plaintiff while Plaintiff was strapped to a gurney.  Evaluation of Plaintiff's claims of excessive force and failure to protect would require the Court to assess the need for the force used applied by Sgt. Trevino and Sgt. Alvarez as well as to determine whether Officer Guzman should have intervened to protect Plaintiff from such a use of force.

Success on Plaintiff's excessive force and failure-to-protect claims does not necessarily invalidate the disciplinary proceeding where Plaintiff was found guilty of assaulting Sgt. Trevino.  The uncontroverted summary judgment evidence establishes that Plaintiff suffered serious injuries in connection with the use of force consisting of facial abrasions and bruising, jaw pain, and avulsed teeth.  While Plaintiff's act of striking Sgt. Trevino may have justified some use of force, his excessive force and failure-to-protect claims would not be barred if the force used in response to Plaintiff's actions went beyond proper limits.  *Hill v. Henry*, No. C-11-127, 2012 WL 2312814, at *1 (S.D. Tex. Jun. 18, 2012) 1 (citing *Bush*, 513 F.3d at 497).  The competent summary judgment evidence establishes, at a minimum, factual issues as to whether the force used by Sgt. Trevino and Sgt. Alvarez was malicious and sadistic and whether Officer Guzman should

have intervened to protect Plaintiff.   Accordingly, Plaintiff's claims are not barred by *Heck*.

Even if Plaintiff's claims were inextricably intertwined with the disciplinary conviction for assault, they are not subject to the *Heck* bar.   Plaintiff seeks damages for the violation of Plaintiff's Eighth Amendment rights and not the restoration of good-time credits or reversal of his disciplinary conviction.   Because success in this action does not affect the extent or duration of his confinement, *Heck* does not preclude Plaintiff's excessive force and failure-to-protect claims.   *Muhammad*, 540 U.S. at 751; *Hill v. Henry*, No. C-11-127, 2012 WL 2319096, at *1 (S.D. Tex. May 1, 2012).   Accordingly, when viewing the evidence in a light most favorable to Plaintiff, it is respectfully recommended that the Security Defendants' summary judgment motion (D.E. 126) be denied.[3]

### B.    The Medical Defendants' Summary Judgment Motion

#### (1)   Exhaustion

In their summary judgment motion, the Medical Defendants first seek dismissal of Plaintiff's deliberate indifference claims against RN Tijerina for failure to exhaust his administrative remedies.   (D.E. 129, pp. 6-9).   The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

---

[3]  The Security Defendants make no argument on summary judgment that Plaintiff's excessive force and failure-to-protect claims fail as a matter of law.

18 / 30

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id.* Both steps be completed in order to file suit in federal court. *Id* at 515-16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillon v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010)

("under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

Because exhaustion is an affirmative defense, Defendants have the burden to demonstrate that Plaintiff  failed to exhaust available administrative remedies.'" *Cowart v. Erwin*, 837 F.3d 444, 451 (5th Cir. 2016) (quoting *Dillon*, 596 F.3d at 266). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon*, 596 F.3d at 266.  "[W]hile it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e(a)," in a given case and under a given set of circumstances "availability may sometimes turn on questions of fact."  *Id*.

The Medical Defendants contend that RN Tijerina is only mentioned in one Step 2 grievance (Grievance No. 2016150444).  (D.E. 129, p. 8).  According to the Medical Defendants, Plaintiff failed to exhaust his administrative remedies as RN Tijerina was not identified in both steps of the grievance process.  (D.E. 129, p. 8).  Plaintiff has not responded to the exhaustion argument.

In *Johnson*, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  The Fifth Circuit noted that one of the purposes of the exhaustion requirement is to give officials "time and opportunity to address complaints internally."  *Johnson*, 385 F.3d at 517 (citations omitted).  The *Johnson* court further acknowledged that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that

20 / 30

initiates adversarial litigation." *Id.* at 522. *See also Jones*, 549 U.S. at 219 (concluding that exhaustion is not *per se* inadequate simply because an individual later sued was not named in grievances).

In other words, a grievance "should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* Further, the nature of the complaint will influence how much detail is necessary. *Id.* For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition, such as vermin in a cell or that commissary costs are too high, might not identify any individual. *Id.*

The Fifth Circuit in *Johnson* further explained that, with regard to complaints about prison officials acting improperly, an administrator responding to a grievance ordinarily would want to know the identity of the prison official involved. *See Johnson*, 385 F.3d at 517. The *Johnson* court recognized, however, "that a grievance can sufficiently identify a person even if does not provide an actual name." *Id.* at 523.

In *Patterson v. Stanley*, 547 F App'x 510 (5th Cir. 2013) (per curiam), the Fifth Circuit found that a plaintiff had exhausted his administrative remedies even though he did not name particular defendants in his grievances when he complained that the unit's "medical staff" had discontinued his eyeglass prescription without an eye exam and ordered that his prescription sunglasses be seized as contraband. *Id.* at 511. The Fifth Circuit found that the defendants had offered nothing to show that the plaintiff's reference to "medical staff" did not give prison officials notice and an opportunity to address Patterson's complaint about the sunglasses or that it did not comply with TDCJ

requirements.  *Id.* at 512.  Furthermore, TDCJ did not reject the grievances for failure to name the medical staff and the response given to the plaintiff's Step 2 grievance indicated that TDCJ understood that the plaintiff was complaining about his eyeglasses because the complaint was referred to the Office of Professional Standards and the plaintiff was scheduled for an ophthalmology examination.  *Id.*

The competent summary judgment evidence presented demonstrated that Plaintiff did not raise his claims against RN Tijerina in both steps of Grievance No. 2016150444. The issue presented on the exhaustion issue centers on whether Plaintiff sufficiently identified RN Tijerina in Grievance No. 2016177239 in such a way as to provide the administrative officials reviewing sufficient notice to address his claims against her. Plaintiff previously had identified RN Tijerina in his Step 2 grievance as part of Grievance No. 2016150444 as a medical official who had ignored his sick call requests. While Plaintiff did not mention  RN Tijerina specifically in both steps of Grievance No. 2016177239, it is clear that he sought to identify any or all medical officials who were ignoring his sick call requests.

Similar to *Patterson*, the reviewing officers did not reject Plaintiff's Step 1 and Step 2 grievances for failing to name a medical official, and instead found that Plaintiff's medical issues following the May 25, 2016 assault had been addressed.  Thus, Plaintiff's Step 1 and Step 2 grievances in Grievance No. 2016177239 served its function of alerting prison officials to Plaintiff's complaints regarding whether medical officials, including RN Tijerina ignored, his sick call requests.  Plaintiff's complaints set forth in Grievance

No. 2016177239, therefore, was sufficient to provide prison officials with fair notice of Plaintiff's complaints against RN Tijerina.

Accordingly, when viewing the evidence in a light most favorable to Plaintiff, it is respectfully recommended that the Medical Defendants' summary judgment motion (D.E. 129) on the issue of failure to exhaust administrative remedies be denied.  The undersigned now turns to consider the merits of Plaintiff's deliberate indifference claims against the Medical Defendants.

### (2)   *Deliberate Indifference*

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation omitted).  A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm. *Id.* at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Deliberate indifference requires that prison officials both be aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act.  *Farmer*, 511 U.S. at 837.

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm*." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

"Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Furthermore, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

The Medical Defendants contend in their summary judgment motion that the extensive medical records show Plaintiff as receiving an appropriate level of care from them and that Plaintiff, therefore, cannot establish deliberate indifference. (D.E. 129, pp. 10-13). Plaintiff responds only that his claims have merit. (D.E. 140, p. 1).

In his complaint and testimony at the *Spears* hearing, Plaintiff states that RN Samuel denied him medical attention when he complained of heat exhaustion in the early

evening hours and following the use of force later that evening.  The uncontroverted medical records, however, show that: (1) Plaintiff declined treatment from RN Samuel for his complaints of heat exhaustion and otherwise refused to comply with any direction from RN Samuel.  (D.E. 129-3, pp. 34-35, 47); (2) following the use of force, RN Samuel evaluated Plaintiff and treated him for facial abrasions and bruising, jaw pain, and avulsed teeth (D.E. 129-3, p. 7); (3) in releasing Plaintiff to security following the initial examination and treatment, RN Samuel scheduled Plaintiff for continued medical observation and monitoring  (D.E. 129-3, p. 7); (4) twenty minutes after being released to security, RN Samuel examined Plaintiff again after security personnel requested medical assistance (D.E. 129-3, p. 7); (5) RN Samuel determined that Plaintiff should be transferred to the emergency room at the Christus Spohn Hospital-Beeville for further treatment.  (D.E. 129-3, p. 10); (6) when Plaintiff returned from the emergency room, RN Samuel reevaluated Plaintiff at approximately 3:30 a.m. on May 26, 2016 (D.E. 129-3, pp. 22-28); and (7) Plaintiff, however, refused to continue treatment by RN Samuel because there were no video cameras recording the medical evaluation  (D.E. 129-3, p. 26).

The objective medical evidence shows that RN Samuel provided Plaintiff with appropriate and adequate medical care when Plaintiff allowed RN Samuel to treat him. Based on the uncontroverted evidence presented, RN Samuel treated Plaintiff's injuries suffered as a result of the use of force and determined that Plaintiff should be taken to a free world emergency room.  The fact Plaintiff was uncooperative and refused treatment with regard to his initial heat exhaustion complaints and when he returned from the

emergency room does not show RN Samuel acted with deliberate indifference to Plaintiff's serious medical needs. Overall, the competent summary judgment demonstrates that RN Samuel either attempted to treat or did treat Plaintiff's complaints and did not act in wanton disregard to Plaintiff's medical issues.

Plaintiff further complains that RN Tijerina ignored his many sick call requests following the use of force. However, the uncontroverted medical records show that Plaintiff received substantial medical treatment as follows: (1) during the morning of May 26, 2016, medical personnel at the McConnell Unit treated Plaintiff's dental avulsions (D.E. 129-3, pp. 28-30); (2) medical staff prescribed antibiotic and anti-inflammatory medicines to treat Plaintiff's avulsed teeth, attempted to stabilize Plaintiff's loose tooth, and scheduled a follow-up appointment (D.E. 129-3, p. 29); (3) medical staff further ordered x-ray imaging of Plaintiff's forearm to address his complaints of tenderness, bruising, and fluid retention in the affected area (D.E. 129-3, p. 32); (4) on June 1, 2016, medical personnel reviewed x-rays of Plaintiff's left forearm and noted no acute fracture or dislocation (D.E. 129-3, p. 63); (5) on June 2, 2016, medical staff ordered follow-up blood work and vaccines at regular intervals for the next year, and encouraged Plaintiff to submit sick call requests as needed for follow-up complaints (D.E. 129-3, p. 64); (6) medical staff treated Plaintiff on June 30, 2016 with a steroid injection for pain and inflammation (D.E. 129-3, pp. 109-10); (7) Plaintiff visited the medical department for follow-up dental treatment on July 20, 2016, and the dentist ordered x-rays of the affected teeth and prescribed further treatment with antibiotic medication (D.E. 129-3, pp. 124-127); and (8) on July 27, 2016, Plaintiff visited the

medical department for neck pain, and a cervical spine x-ray was ordered (D.E. 129-3, pp. 128-29).  No evidence has been presented to suggest that RN Tijerina either treated Plaintiff inadequately or otherwise deliberately ignored any of his requests for medical treatment.  Overall, the competent summary judgment demonstrates that RN Tijerina did not act in wanton disregard to Plaintiff's medical issues.

In his complaints and testimony at the *Spears* hearing, Plaintiff states that RN Samuel refused to provide him with medical attention and that RN Tijerina ignored his many sick call requests.  Although his sworn § 1983 complaint and testimony at the *Spears* hearing are proper summary judgment evidence, Plaintiff must as the party with the burden of proof identify genuine issues of material fact to avoid summary judgment in movant's favor.  *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).  Plaintiff, however, has come forward with no evidence in connection with the Medical Defendants' summary judgment motion to establish a genuine issue of material fact as to whether they acted with deliberate indifference to his serious medical needs.

Overall, the undersigned finds that Plaintiff's complaints regarding the medical treatment on May 25, 2016 and following the use of force that day amounts to his disagreement over the course of treatment he has received.  *See Whiting v. Kelly*, 255 F. App'x 896, 899 (5th Cir. 2007) ("Although [plaintiffs] clearly believe that they should undergo additional testing and drug therapies, such disagreement does not give rise to a constitutional claim.") (citations omitted).  Plaintiff's disagreement with the medical treatment and unhappiness with the medical care afforded to him by the Medical Defendants are insufficient to state a § 1983 claim.  *See Gibbs v. Grimmette*, 254 F.3d

545, 549 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Accordingly, even when taking as true the evidence in a light most favorable to Plaintiff, he has submitted no summary judgment evidence which raises a genuine issue of fact as to whether the Medical Defendants acted with deliberate indifference to his serious medical needs.

### C.   Qualified Immunity

The Medical Defendants contend they are entitled to qualified immunity in connection with Plaintiff's claims against them in their individual capacities.   The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.   *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).   "To discharge this burden, the plaintiff must satisfy a two-prong test.   *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).   First, he must claim that the defendant committed a constitutional violation under current law.   *Id.*   Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions.   *Id.*

It is often but not always appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation has occurred.  *See Pearson*, 555 U.S. at 236.  In this case, because Plaintiff has failed to establish Eighth Amendment claims against the Medical Defendants, it is not necessary to examine whether their actions were objectively reasonable.  Accordingly, it is respectfully recommended that the Medical Defendants are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims asserted against them in their individual capacities.

## VI.   RECOMMENDATION

For the foregoing reasons, **IT IS RESPECTFULLY RECOMMENDED** that the Security Defendants' Motion for Summary Judgment (D.E. 126) be **DENIED** as to Plaintiff's excessive force and failure-to-protect claims against them.

**IT IS RESPECTFULLY RECOMMENDED** further that the Medical Defendants' Motion for Summary Judgment (D.E. 129) be: (1) **DENIED** on the issue of exhaustion with respect to RN Tijerina; and (2) **GRANTED** as to the merits of Plaintiff's Eighth Amendment claims of deliberate indifference because the competent summary judgment evidence establishes that such claims are subject to dismissal and because the Medical Defendants are entitled to qualified immunity.

Respectfully submitted this 13th day of May 2019.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).